# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

JOSEPH M. BREAUX                          CIVIL ACTION NO. 3:15-cv-2491
      LA. DOC #510569

                                   SECTION P

VS.

                                   JUDGE ROBERT G. JAMES

WARDEN BURL CAIN                          MAGISTRATE JUDGE HAYES

## REPORT AND RECOMMENDATION

*Pro se* Petitioner Joseph M. Breaux, an inmate in the custody of Louisiana's Department of Corrections, filed the instant Petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on October 6, 2015. [doc. # 1]. Petitioner attacks his June 25, 2009, convictions for armed robbery and conspiracy to commit armed robbery, his subsequent adjudication as a multiple felony offender and the sentence of life without parole imposed thereon by Louisiana's Third Judicial District Court, Lincoln Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the Court.

## Background

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal as follows:

> On April 19, 2008, at approximately 11:33 p.m., Officer T.J. Bryant, of the Ruston Police Department, responded to a report of a single-vehicle accident in the 800 block of South Maple Drive. Officer Bryant arrived on the scene and observed a 2001 Kia Rio in a ditch, overturned on its roof. The driver of the vehicle, Uchenna Ezike, was lying in a pool of blood inside the vehicle. Ezike was airlifted to Louisiana Health Sciences Center in Shreveport, Louisiana, where he subsequently died.
>
> Lieutenant Stephen Beard, also of the Ruston Police Department, was called to the

scene to investigate the accident.[1] Lt. Beard examined the vehicle and noticed blood inside the vehicle, running in a downward direction from the top of the vehicle to the bottom of the vehicle.[2] Considering that the vehicle was in an overturned position, the blood pattern indicated to Lt. Beard that Ezike had been injured prior to the accident. He suspected that the injuries to the back of Ezike's head were not consistent with injuries sustained in a low-impact car accident. Subsequently, Lt. Beard examined the vehicle more closely to determine what may have caused Ezike's injuries. There were no signs of gunshots, and no weapons were found in or around the vehicle.[3]

Lt. Beard's suspicions were further heightened when he did not find any of Ezike's personal effects, such as a wallet, credit cards or cellular phone. On April 24, 2008, Lt. Beard accompanied Ezike's brother to Chase Bank and recovered Ezike's bank records. The bank records revealed that four credit/debit card transactions were made at a Circle K store on April 20, 2008, one day after the accident.

Further investigation led police officers to two suspects: Laterica Hardy ("Hardy") and Adrianna Gipson ("Gipson"). Hardy and Gipson both gave statements to the police, denying any involvement in the crime. Subsequently, both admitted that they, along with the defendant, had robbed Ezike. The testimony revealed that on the day of Ezike's accident, Hardy, Gipson and the defendant attended a barbeque at the home of the defendant's girlfriend, Nicole Gipson ("Nicole"). Looking to make some quick money, Gipson suggested that they "hit a lick" (find someone to rob). During the discussion, Hardy suggested someone she knew, Ezike, as the target.

Hardy called Ezike and enticed him to meet her in a park by offering to have sex with him. The defendant armed himself with a stick, and he, Hardy and Gipson left Nicole's house together.[4] Hardy drove the defendant and Gipson to a local

---

[1] Lt. Beard testified that he is called to the scene of any accident involving a fatality or serious injuries.

[2] Lt. Beard also found blood on the B-pillar on the driver's side of the vehicle. The B-pillar is a piece of metal between the front door and back door that supports the roof of the vehicle.

[3] A subsequent autopsy revealed that Ezike died from a hemorrhage caused by a fractured skull. The medical examiner determined that the skull fracture was not caused by the automobile accident.

[4] Witnesses described the weapon differently. During the testimony, the weapon was described as a "broken shovel handle or broomstick," a "bat" and a "thick stick" similar to a

park and left them there. Hardy soon returned with Ezike trailing her in his vehicle. Hardy and Ezike sat in Ezike's vehicle talking. The defendant approached Hardy and asked if she had a cigarette. Feeling uncomfortable, Ezike requested that they leave the park. As Ezike exited his vehicle to accompany Hardy back to her car, the defendant approached Ezike and began hitting him in the head with the stick. Ezike fell to the ground, and the defendant continued to strike him. The defendant took Ezike's wallet, two cell phones and "a little money" from his pockets. The defendant and Gipson then ran away. Hardy testified that she waited until Ezike got up and into his vehicle before she left the scene.

Hardy, Gipson and the defendant returned to Nicole's house and divided the proceeds from the robbery. Soon thereafter, the defendant went to a Circle K store on Farmerville Highway and used Ezike's credit/debit card to purchase gas and cigarettes.[5] A short time later, the defendant, Hardy and Gipson returned to the store, and Gipson used one of Ezike's credit/debit cards to purchase additional items.

On May 19, 2008, the defendant, Hardy and Gipson were charged with one count of armed robbery and one count of conspiracy to commit armed robbery.[6] Following a jury trial, the defendant was convicted as charged. He was adjudicated a fourth felony offender and was sentenced to serve life in prison, without benefit of probation, parole or suspension of sentence on both charges. The sentences were ordered to be served concurrently.

*State v. Breaux*, 55 So. 3d 806, 807-09 (La. App. 2 Cir. 2010). The appellate court affirmed

Petitioner's conviction and sentence on November 3, 2010. *Id.* The Louisiana Supreme Court

denied Petitioner's subsequent application for writ of certiorari on April 29, 2011. *State of*

*Louisiana v. Joseph M. Breaux*, 62 So. 3d 109 (La. 2011).

On May 3, 2012, Petitioner filed a *pro se* application for post-conviction relief in the trial

court, raising three claims: (1) & (2) insufficient evidence; and (3) ineffective assistance of

_____

cane.

[5] The footage from the store's security cameras reflects that the defendant used Ezike's debit/credit card at Circle K on two separate occasions. He was accompanied by Hardy and Gipson on only one occasion.

[6] Hardy and Gipson pled guilty to armed robbery.

counsel. [doc. # 1-2, p. 46-64]. On September 21, 2012, petitioner filed a *pro se* supplemental application for post-conviction relief in the Third Judicial District Court pleading a single claim for ineffective assistance of counsel. *Id.* at 65-70. On September 23, 2013, petitioner filed another *pro se* supplemental application for post-conviction relief arguing another claim of ineffective assistance of trial counsel based upon counsel's failure to impeach the testimony of Adrianna Gipson, a co-defendant who testified against petitioner at trial; he also argued a claim that the State knowingly offered the perjured testimony of Adrianna Gipson. *Id.* at 71-78.

On April 7, 2014, the Third Judicial District Court denied post-conviction relief. *Id.* at 79-84. The Court specifically held that petitioner failed to establish his claims of ineffective assistance of counsel as raised in his original application for post-conviction relief; with regard to the supplemental application, the court ruled that petitioner inexcusably failed to raise this claim in the proceedings leading to conviction. *Id.* Finally, with regard to the second supplemental application filed on September 23, 2013, the Court held that it was untimely filed pursuant to La. C. Cr. P. art. 930.8. *Id.*

On June 6, 2014, Petitioner submitted a *pro se* writ application to the Second Circuit Court of Appeal. *Id.* at 85-106.  In this writ application petitioner raised the same issues raised in Claims 1 and 2 of the application for post-conviction relief with respect to the habitual offender adjudication; petitioner also raised a claim of ineffective assistance of counsel claiming (a) counsel failed to file a written objection to the State's urging of the Court to impose a mandatory life sentence on the habitual offender adjudication; and (b) failed to file a motion to reconsider sentence. He also argued a Fourth Claim for Relief, namely ineffective assistance of counsel based on counsel's failure to advise petitioner of the 30 year plea offer. *Id.*

4

On August 7, 2014, the Second Circuit Court of Appeal denied writs "on the showing made" and mailed notice of judgment to the petitioner. *State of Louisiana v. Joseph M. Breaux*, No. 49,553-KH; *Id.* at 107-08. The Louisiana Supreme Court likewise denied Petitioner's application on September 18, 2015. [doc. # 1-2, p. 141].

Petitioner filed the instant Petition on October 6, 2015, requesting relief for the following claims: (1) trial court's granting of the State's *Batson* challenge; (2) trial court refused to permit secret ballots by the jurors; (3) ineffective assistance of counsel for failing to convey plea agreement; and (4) ineffective assistance of counsel for failing to object to State's request that Petitioner be sentenced to life imprisonment and for failing to file a motion to reconsider the sentence imposed. [doc. # 1-1].

The matter is now before the Court.

**Law and Analysis**

## I.    Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II.    Petitioner's Claims

### A. Claim One: *Batson* Challenge

Petitioner first claims that the trial court erred in sustaining the State's "reverse-*Batson*" challenge. [doc. # 1-1, p. 17]. Petitioner contends that the State made a "bare-bones" reverse-*Batson* claim "without complying with the procedural requirements of *Batson*." *Id.* at 21. Petitioner argues that the State failed to meet its burden of showing that Petitioner's use of strike backs to strike potential jurors was racially motivated. *Id.* at 17.

The Supreme Court has held that a party's racially discriminatory use of peremptory

6

challenges violates the Equal Protection Clause of the Fourteenth Amendment. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (holding that Equal Protection Clause applies to the prosecution's use of peremptory challenges); *Georgia v. McCollum*, 505 U.S. 42, 46 (1992) (applying Batson to a criminal defendant's use of racially discriminatory peremptory challenges). A court evaluating a reverse-Batson challenge applies a three-part test:

> First, the [moving party] must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." Second, once the [moving party] has made out a prima facie case, "the burden shifts to the [non-moving party] to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes. Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination."

*Johnson v. California*, 545 U.S. 162, 168 (2005) (internal citations and quotation marks omitted).

Attacking the application of step one, Breaux first argues that despite the trial court's ruling to the contrary, the prosecution did not establish a prima facie case of discrimination. Specifically, he points out that the trial court erroneously made this determination by "completely [ignoring] the entire *Batson* procedure for resolving the motion." [doc. # 1-1, p. 18]. Once defense counsel objected, Breaux contends, the burden should have shifted to the prosecutor to refute the claim. *Id.*

To establish a prima facie showing for a *Batson* challenge: (1) the objecting party must demonstrate that the challenge was directed at a member of a cognizable group; (2) the objecting party must then show the challenge was peremptory rather than for cause; and (3) finally, the objecting party must show circumstances sufficient to raise an inference that the challenging party struck the venire person on account of being a member of that cognizable group. *State v. Givens*, 99–3518 (La.1/17/01), 776 So.2d 443; *Price v. Cain*, 560 F.3d 284 (5th Cir. 2009).

Establishing a prima facie showing is the first step of the *Batson* analysis and it is satisfied by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred. The objecting party does not have to show that "more likely than not" the peremptory challenge was based on impermissible group bias. *Johnson*, 545 U.S. 162 (2005). The burden upon the objecting party is therefore a "light burden," for purposes of establishing a prima facie case. *Price*, *supra*.

Here, the trial court believed that the State had met the light burden of establishing a prima facie case.

> [A]fter the defense exercised its ninth peremptory challenge, the state argued that the defense had exercised all strikes against Caucasians, but had neither challenged for cause nor exercised a peremptory challenge for any potential juror who was African–American. The court accepted the state's argument as a prima facie showing that the strike backs were based on race. Accordingly, the court ordered the defense to provide race and gender neutral reasons for the strike backs, to which the court accepted seven of the nine reasons. The court considered the defense's proffered explanations and accepted seven of the explanations. However, the court rejected the explanations with regard to two potential jurors, expressing that it "felt like race and gender were playing a role in the defense's exercise of peremptory challenges." In light of the Batson violation concerning those two potential jurors, the court ordered that any further strike backs had to be accompanied with race and gender neutral reasons. However, the court did not order those two potential jurors to be reseated.

*Breaux*, 55 So. 3d at 813.

The Supreme Court in *Hernandez v. N.Y.*, 500 U.S. 352 (1991) stated that a reviewing court should give a trial judge's factual findings on discriminatory intent great deference and should not reverse them unless they are clearly erroneous. *Id.* at 364–65. The presumption of validity attaching "to a trial court's factual finding at Batson's third step . . . is doubly strong when the *Batson* finding is under collateral attack in habeas." *Miller–El v. Dretke*, 545 U.S. 231,

8

284 (2005). Consequently, the Court in *Rice v. Collins*, 546 U.S. 333, 334 (2006), admonished courts from substituting their evaluation of the record for that of the trial judge.

The record does not support the defendant's assertion that the trial court did not comply with "procedural requirements of Batson." The court accepted the State's prima facie showing that the strike backs were based on race and defense counsel was unable to articulate a race neutral reason for exercising the challenges against two potential jurors. Thus, the court found a discriminatory intent. Such factual findings by "state courts are presumed to be correct, and may be set aside . . . only if they are 'not fairly supported by the record.'" *Purkett*, 514 U.S. at 769, 115 S.Ct. 1769 (quoting 28 U.S.C. § 2254(d)(8)). Under these circumstances, Breaux has not presented clear and convincing evidence to rebut the presumption that the state court acted reasonably. *Miller–El*, 545 U.S. at 240. Importantly, the two potential jurors were not reseated on the jury, therefore Breaux did not suffer any prejudice. There is enough evidence in this case, bolstered by the presumption of correctness, justifying the state court's decision, and, as a result, a writ may not issue on *Batson* grounds.

B. Claim Two: Denial of Paper Slip Ballots For Jury

Petitioner next claims that the trial court erred in denying the jury's request for "paper slips" to enable the jury to vote by secret ballot. Petitioner argues that the trial court erred "by telling the jury that it could not vote the way it wanted to vote." [doc. # 1-1, p. 24]. Petitioner cites La. Const. Art 1 § 17 and La. C. Cr. P. art 782 for the proposition that, "it has long been established that a defendant is constitutionally entitled to a jury that can deliberate without any interference as to how it votes." *Id.* at 22.

However, La. Const. Art 1 § 17 and La. C. Cr. P. art 782 do not state that a defendant is

entitled to a jury that can deliberate without any interference as to how it votes. The Louisiana

Constitution Article 1, §17 states:

> (A) Jury Trial in Criminal Cases. A criminal case in which the punishment may be capital shall be tried before a jury of twelve persons, all of whom must concur to render a verdict. A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, all of whom must concur to render a verdict. The accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law. Except in capital cases, a defendant may knowingly and intelligently waive his right to a trial by jury.

> (B) Joinder of Felonies; Mode of Trial. Notwithstanding any provision of law to the contrary, offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor; provided, however, that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; and provided further, that cases so joined shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.

Similarly, LA. CODE CRIM. PROC. art. 782 provides:

> A. Cases in which punishment may be capital shall be tried by a jury of twelve jurors, all of whom must concur to render a verdict. Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Cases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict.

> B. Trial by jury may be knowingly and intelligently waived by the defendant except in capital cases.

Neither cited material provides that a court may not interfere with the procedure by which a jury

votes. Petitioner's argument that the jury's deliberations were tainted is not supported by the

record. As the Louisiana Second Circuit Court of Appeals noted:

The record reveals that prior to giving instructions to the jury, the trial court stated:

> Once we have [read the instructions], the principal jurors will go to the jury room and begin their deliberations and be sequestered until they reached [sic] a verdict. You will leave everything else out here, your cell phones; any communication devices will not be taken with you. I will give you a writing implement to take with you.

The court then proceeded to instruct the jury with regard to, *inter alia*, the presumption of innocence, the standard of proof, credibility of witnesses, the relevant law and the responsive verdicts to the crimes charged. The court then stated:

> There are no limitations on your deliberations, except you are confined to the evidence in the case and the law given you by the Court. When it comes time for you to decide on a verdict, each juror must arrive at his own individual and separate conclusion and must vote his separate and individual conscience.
>
> Before you retire, the Court, I, will hand you two verdict forms on one page. Each form contains the responsive verdicts that I have mentioned. Each form is for each count.
>
> Ten of you must agree on the same verdict per form, and it must and can only be one of those listed on each form handed to you. When you have reached your verdicts, and at least ten of you have agreed on each verdict, your foreman shall write that verdict as those words appear on the front of the form.

The jury then retired to the jury room for deliberations. Prior to returning a verdict, the jury sent a communication to the trial court, requesting "paper slips in order to take secret ballots." Outside of the presence of the jury, the court stated:

> Jurors do not have the right, as I am understanding—able to understand it, to vote in secret. There might be a technical argument that they could initially vote that way but that's a slim, technical argument.
>
> Their deliberations are between and among themselves. It's private within there, but I don't know that they can do secret ballot. I don't think they have that luxury. And certainly their—even their individual decisions aren't secret when they come back into the

courtroom with their verdict.

When the jury returned to the courtroom, the court stated, "As concerns communication number two, request paper slips in order to take secret ballots: The answer to that is no."

The trial court made no comments designed to influence or "taint" the jury's deliberations in any way. The court did not instruct the jury how to vote, nor did it comment upon evidence or give an opinion. Additionally, prior to deliberations, the court specifically instructed the jury that, "there are no limitations on your deliberations except you are confined to the evidence in the case and the law given by the court."

*Breaux*, 55 So. 3d 806, 814-15. The trial court did not interfere with the jury's deliberations, the court did not comment on the facts or evidence and did not give any opinion when it denied the request for paper ballot slips. Additionally, Petitioner has not provided any authority to support his proposition that the jurors must be allowed to vote by paper slip ballots. This claim should be **DENIED**.

C. <u>Claim Three & Four: Ineffective Assistance of Counsel</u>

Petitioner claims that his trial counsel was ineffective for: (1) failing to inform him of the State's plea offer; and (2) failing to object to State's request that Petitioner be sentenced to life imprisonment and for failing to file a motion to reconsider the sentence imposed. [doc. # 1-1, p. 25, 31].

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also

need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997). Further, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

When applying the first prong of *Strickland*, federal courts do not second-guess the attorney's decision from the distorting perspective of hindsight; rather, they presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. *See Strickland*, 466 U.S. at 689-90. The burden, therefore, is on the petitioner to show that counsel's representation was objectively unreasonable. *Id.* at 688.

To establish prejudice, the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "That requires a substantial, not just conceivable, likelihood of a different result." *Cullen*, 131 S. Ct. at 1403 (internal quotation marks and citation omitted). Stated differently, a petitioner must demonstrate that counsel's actions "were so serious as to render the proceedings unreliable and fundamentally unfair." *U.S. v. Saenz-Forero*, 27 F.3d 1016, 1021 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

    i. Plea Offer

Petitioner claims that his rights were violated due to ineffective assistance of counsel

because counsel rejected a plea bargain on Petitioner's behalf, without informing Petitioner. "In determining whether or not to plead guilty, the defendant should be made aware of the relevant circumstances and likely consequences so that he can make an intelligent choice." *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995). Defense counsel's failure to inform the defendant about a plea bargain can amount to ineffective assistance of counsel. *Id.*

Breaux argues that his attorney rejected the plea offer of thirty years at hard labor before discussing the offer with him and offers a letter sent to him by his counsel as proof of this claim. However the letter does not support Breaux's claim. The letter states, in pertinent part:

> I recently received more discovery from the State, which essentially consists of transcripts of statements taken from Laterica Hardy and Adriene Gibson. They each pled guilty to armed robbery and received a 12 year sentence. I'm sure the State intends to call them at your trial to testify that you were the one who struck the decedent in the head with a shovel handle. Assistant District Attorney Cliff Strider who is prosecuting your case wants you to plead guilty to armed robbery, and if you do, he will recommend a sentence of 30 years at hard labor. I told Mr. Strider that I would not **advise** you to plead guilty, as charged, and even if I did, I didn't think you would do so knowing you would get 30 years.

[doc. # 1-2, p. 112] (emphasis added). The letter does not, as Petitioner contends, demonstrate that Petitioner's counsel had already rejected the offer or that he failed to tell Petitioner about the offer. Instead, the letter demonstrates that Breaux was made aware of the plea offer and that his defense counsel advised him about the possible consequences of accepting the plea offer. While the letter does indicate that Petitioner's counsel advised him not to accept the offer, it does not support a claim of ineffective assistance of counsel.

Nevertheless, even assuming counsel did fail to convey the offers, it is reasonable to conclude that counsel's failure did not prejudice Petitioner because Petitioner would likely have rejected any deal presented to him. Breaux consistently and unwaveringly maintained his

innocence and was unwilling to plead guilty. [doc. # 19, p. 28]. Therefore, even if the Court were to assume that Breaux was never made aware of the plea offer, his consistent and unwavering assertions of innocence demonstrate that he would not have accepted the plea offer in the first place. Thus, he cannot show prejudice. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012) (stating that, to demonstrate prejudice, the petitioner must show "a reasonable probability that the plea offer would have been presented to the court (i.e., that [he] would have accepted the plea and the prosecution would not have withdrawn it)"). Petitioner's claim for ineffective assistance of counsel on this basis should be **DENIED**.

    ii. Failure to Object to Sentence and Failure to File a Motion to Reconsider

    Petitioner claims that his counsel was ineffective for not objecting to his sentence as a four time multiple offender and for not filing a motion to reconsider the sentence imposed. [doc. # 1-1, p. 31]. On June 25, 2009 Petitioner was convicted on one count of armed robbery and one count of conspiracy to commit robbery. [doc. # 19-2, p. 230]. On October 13, 2009, a multiple offender hearing was held.  Petitioner was found to be a fourth felony offender and sentenced to two life sentences, both to run concurrently. [doc. # 19-6, p. 197]. Petitioner's conviction and sentence were affirmed by the Court of Appeal, and the Louisiana Supreme Court denied writs. *State v. Breaux*, 55 So.3d 806, *writ denied* 63 So.3d 109 (La. 2011).

    Petitioner claims that the sentence imposed was not authorized by the Louisiana Habitual Offender Law, La. R. S. § 15:529(A)(1)(C)(ii),  "because the two prior Texas convictions for possession of cocaine [were] not punishable by a minimum sentence of ten (10) years, were not sex crimes, and were not crimes of violence. . . . Therefore, the mandatory life sentence which the Judge imposed is an illegal sentence." [doc. # 1-1, p. 31]. La. R. S. § 15:529.1 states, in

pertinent part:

> (4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:

> (b) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 *et seq.* when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.

Here, Petitioner contends that his two prior Texas convictions for possession of cocaine do not satisfy the elements listed in La. R. S. § 15:529.1 (A)(4)(b). According to Petitioner, his felony convictions for possession of cocaine were "both 2nd degree" felony offenses. [doc. # 8-1, p. 30]. Tex. Penal Code § 12.33 states, "[a] n individual adjudged guilty of a felony of the second degree shall be punished by imprisonment in the Texas Department of Criminal Justice for any term of not more than 20 years or less than 2 years." Petitioner's two second degree felony possession of a controlled substance convictions are therefore classified "as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more." Petitioner's third felony was considered a crime of violence under La. R. S. § 14:2(b), thus satisfying the elements of La. R. S. § 15:529.1 (A)(4)(b).

Petitioner's sentence was not "illegal," and therefore Petitioner's counsel was not deficient for failing to raise an objection to the sentence. Counsel is not required to make futile motions or objections. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (citation omitted). Here, counsel did not render ineffective assistance in choosing not to object or for failing to file a

16

motion to reconsider because, for the reasons explained above, any objection to the alleged errors would have been futile. This claim should be **DENIED**.

**Conclusion**

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for writ of *habeas corpus* filed by Petitioner Joseph Breaux, [doc. # 1], be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of

appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

       In Chambers, Monroe, Louisiana, this 16th  day of August, 2016.


_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE